UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **NELSON IHEONUNEKWU** § § § | | |
| *Plaintiff,* § § | | |
| § | Civil Case No., _____ | |
| v. § § | | |
| **JOHN SEALY SCHOOL OF MEDICINE AT THE UNIVERSITY OF TEXAS MEDICAL BRANCH,** § § § | | |
| *Defendant.* § § § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, Nelson Iheonunekwu, ("Plaintiff"), to file this *Plaintiff's Original Complaint* against the Defendant, John Sealy School of Medicine at the University of Texas Medical Branch ("Defendant") as follows:

### A.    NATURE OF SUIT

1. At all times relevant, Plaintiff Nelson Iheonunekwu was a student attending Defendant John Sealy School of Medicine at the University of Texas Medical Branch.

2. During the 2023-2024 school year Plaintiff contacted Defendant's Disability/ADA Office seeking accommodations as a qualified student with a health impairment that substantially limits major activities and functioning.

3. On December 15, 2023, Plaintiff completed and signed Defendant's official "Institutional ADA Office Consent for Release of Confidential Information" form. This form specifically authorized the ADA Office to obtain medical information from Dr. Novak at Student Health & Counseling.

1

4. On December 18, 2023, Plaintiff went to Student Health & Counseling to obtain testing accommodation documentation (specifically a doctor's note) for his disability as requested by the ADA Office. Plaintiff also indicated interest for an ADHD evaluation. Dr. Novak of Student Health & Counseling informed Plaintiff that Student Health & Counseling could not provide an accommodation letter, as the accommodation paperwork would require "several days of testing" from outside providers. Dr. Novak did not offer any low-cost alternatives, financial assistance, or provisional accommodation letter as per Plaintiff's diagnosis and/or request for a doctor's note.

5. While under the supervision of Defendant, Plaintiff was not provided reasonable accommodations for his disabilities and was discriminated against on the basis of disability. Defendant imposed and maintained documentation barriers and failed to engage in or complete the required good-faith interactive process. As a result, Plaintiff was constructively denied equal access to and the benefits of Defendant's educational program.

6. Deterred by the conflicting directives from ADA Office and Student Health & Counseling, high cost and multi-day testing required for a formal accommodation evaluation, Plaintiff was not given the necessary disability accommodations he requested from Defendant.

7. In Spring 2025, Plaintiff did not pass the EER course by approximately one percentage point. This period coincided with an end-of-year transition widely recognized as high-stress in medical education. In addition, Plaintiff underwent the stressful and lengthy grade appeal process to appeal his EER grade. This impacted his ability to focus on his POM2 course and caused ongoing emotional distress.

8. In the Spring 2025 semester, Plaintiff failed the POM2 course. During the course, Defendant failed to provide Plaintiff with two remediation opportunities, one before each of the two retakes of the exams, as required by the course syllabus. Before the first retake of the exam, Plaintiff requested feedback from Dr. Gonzalez regarding the deficiencies underlying his initial OSCE performance. On March 31, 2025—prior to the scheduled OSCE retake—Plaintiff emailed course leadership seeking clarification on the grading basis and whether any penalty or component deficiency caused the posted score, so that he could correct those issues and improve on the retake. Defendant did not provide any feedback. Although the course structure required remediation before each retake, Defendant failed to provide Plaintiff with feedback prior to Plaintiff's first retake of the exam. Defendant then failed to provide Plaintiff with the required second remediation and significantly contributed to adverse academic consequences to Plaintiff.

9. In June of 2025, Plaintiff obtained formal comprehensive testing, at significant personal cost, as directed by Defendant's Student Health & Counseling in 2023.

10. In June of 2025, Plaintiff provided Defendant's ADA Office with the formal psychoeducational evaluation performed by a clinical psychologist.

11. In June of 2025, Plaintiff requested accommodations based on the comprehensive formal testing he obtained and submitted to Defendant. Defendant did not provide him with any accommodations.

12. Defendant's ADA Office rejected the formal testing documentation and stated that the Plaintiff needed to bring "specifically a doctor's note" instead. Under Defendant's own published Institutional Handbook of Operating Procedures (IHOP) Policy 07.01.01, IHOP § IX(C), when Defendant requires a second professional opinion, Defendant will pay for the professional opinion. Defendant nonetheless shifted the cost to

3

Plaintiff, creating a financial barrier and delaying/constructively denying accommodations.

13. Defendant's disability-accommodations process, as applied to Plaintiff, imposed unreasonable documentation barriers and delays inconsistent with Defendant's own published IHOP Policy 07.01.01. IHOP § IX(A) states that, upon initiation, the Institutional Americans with Disabilities Act Officer will coordinate with necessary institutional staff "through an interactive process" to identify essential functions and determine an effective, reasonable accommodation. IHOP § IX(B) further provides that documentation may be supplied by the student and his or her "professional diagnostician or medical provider," and must specify the disability and recommend reasonable, specific accommodations. IHOP § XIII(A)(2) contemplates that the student's official accommodation file includes "the student's evaluation for a disability from a qualified professional diagnostician and/or medical provider." Notwithstanding these standards, Defendant's ADA Office repeatedly required "medical documentation, specifically a doctor's note" (December 2023; June 2025), narrowed acceptable documentation, and treated that demand as a prerequisite to engaging in or completing the interactive process and to making any timely accommodation determination, contrary to IHOP § IX(A).

14. In June of 2025, Plaintiff requested that Defendant acknowledge that Plaintiff needed accommodations during the 2024-2025 academic school year and that the lack of accommodations impacted his grades. Defendant refused to acknowledge this and did not provide any relief

15. On June 23, 2025, Plaintiff submitted a doctor's note, the previously rejected formal psychoeducational evaluation, and a note from his clinical psychologist.

16. From May of 2025 through July of 2025, the Academic Review Committee denied Plaintiff's academic appeals and violated the Academic Advancement Policies

(AAP) 7.1B by considering Plaintiff's cumulative academic history instead of limiting its review to the appealed course record, as required by policy. The Academic Review Committee utilized criteria and methods of administration in the appeal process that had the effect of subjecting Plaintiff to discrimination on the basis of disability, in violation of the ADA and Section 504 because the academic history the Academic Review Committee relied upon included performance in courses and assessments completed without accommodations, despite Defendant's prior notice of Plaintiff's disabilities and need for accommodations.

17. On September 18, 2025, Defendant's ADA Office approved Plaintiff's requested testing accommodations, approximately twelve weeks after Plaintiff submitted the required documentation on June 23, 2025. Plaintiff had previously sought accommodations in 2023, and Defendant was on notice that Plaintiff faced serious academic consequences from continuing to take graded assessments without accommodations. During the delay, Plaintiff completed multiple graded quizzes and examinations unaccommodated, increasing Plaintiff's risk of adverse academic action and exacerbating Plaintiff's emotional distress. This delay is inconsistent with Defendant's ADA Student Intake materials, which state that the accommodations letter "is composed at the beginning of each semester" and that School of Medicine students receive yearly letters "from July 1–June 30."

18. Plaintiff was forced to repeat his entire MS2 year.

19. Plaintiff is suffering ongoing harm as he is 1) currently repeating his MS2 year; 2) incurring an additional year of tuition, fees, and living expenses; 3) at increased risk of not matching into residency given the intersection of adverse academic notations and his identity as a black medical student with disability; 4) his potential career entry and

5

earnings have been delayed by one year; and 5) he is suffering from the emotional and financial distress caused by Defendant's failure to accommodate his disabilities and failure to provide a meaningful remedy for failing to accommodate his disabilities for the 2024-2025 academic school year.

20. Defendant acted with deliberate indifference. Defendant's own website ensures "evaluation and management of uncomplicated anxiety, depression, and eating disorders." Defendant further states that "Student Health and Counseling works closely with Disability Resources and Services." However, Defendant failed to coordinate internally to resolve the conflicting directives given to Plaintiff despite a signed consent authorization in 2023 and the advertised collaboration between departments.

21. Defendant was made aware of Plaintiff's disabilities in the fall of 2023 when Plaintiff requested accommodations. Defendant failed to provide Plaintiff with accommodations as required by federal law. This amounts to deliberate indifference.

22. In June of 2025, Plaintiff again requested accommodations from Defendant. Again, Defendant failed to provide Plaintiff with accommodations as required by federal law. Again, Defendant acted with deliberate indifference.

23. Plaintiff suffered general damages, and non-economic damages, inconvenience, loss of enjoyment of life, and injury to reputation from Defendant's discriminatory acts.

24. Plaintiff now files this action for relief pursuant to 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12131 et. seq. (Title II of the Americans with Disabilities Act ("ADA")) and 29 U.S.C. § 794 (Section 504 of The Rehabilitation Act of 1973 ("Rehabilitation Act")). 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12131 et. seq. protects qualified individuals with disabilities from discrimination on the basis of disability in

6

services, programs, and activities provided by State and local government entities. 29 U.S.C § 794 extends the prohibition on discrimination to all activities of by State and local governments regardless of whether these entities receive federal financial assistance. Both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.

## B.    PARTIES

25. Plaintiff is an individual residing in Texas.

26. Defendant, John Sealy School of Medicine at the University of Texas Medical Branch is a non-profit public university operating in the State of Texas.

## C.    SERVICE

27. Defendant is a non-profit public university located in Galveston County, Texas, and may be served with process by and through its attorney, David Kallus, Assistant Attorney General, Office of the Attorney General, P.O. Box, 12548, Capitol Station, Austin, TX 78711.

## D.    JURISDICTION and VENUE

28. The jurisdiction of this Court is in accordance with 28 U. S. C. § 1331 as involving a *federal question* proceeding arising under 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12131 et. seq. and 29 U.S.C. § 794.

29. Venue is proper in the Galveston Division of the Southern District of Texas because Defendant's conduct occurred in Galveston County, Texas at the time of the incident. Venue is also proper in the Galveston Division of the Southern District of Texas because Defendant operates in Galveston County, Texas.

## E.    LEGAL AUTHORITY

18. The Congress finds that—

>Physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination. 42 U.S.C. § 12101(a)(1).

19. 42 U.S.C. §12131 states:

>**(1) Public entity**
>
>The term "public entity" means—
>
>>(A) Any State or local government;
>>
>>(B) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>>
>>(C) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of title 49).
>
>**(2) Qualified individual with a disability**
>
>The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

20. 29 U.S.C. § 794 states:

>**a. Promulgation of rules and regulations**
>
>No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be

8

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  The head of each as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.  Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

b. **"Program or activity" defined**

For the purposes of this section, the term "program or activity" means of all of the operations of—

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

 (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or

(B) a local educational agency (as defined section 7801 of title 20(, system of career and technical education, or other school system;

(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—

9

    (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or

    (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or

(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

(4) any other entity which established by two or more of the entities described in paragraph (1), (2), or (3);

Any part of which is extended Federal financial assistance."

21. 28 C.F.R. § 42.521 states:

 (a) "[E]ach program or facility" to which the provision applies must be "readily accessible and usable by handicapped persons."

 (b) Covered entities may be required to facilitate access via the "acquisition or redesign of equipment, reassignment of services to accessible buildings, assignment of aids to beneficiaries, delivery of services at alternate accessible sites, alteration of existing facilities, or any other method that results in making its program or activity accessible to handicapped persons."

22. 29 U.S.C. § 794a states:

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of

Federal assistance or Federal provider of such assistance under section 794 of this title. 29 § 794a(a)(2).

23. 42 U.S.C. § 2000d states:

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State. 42 U.S.C. § 2000d-7.

### F. PLAINTIFF'S CAUSE OF ACTION

24. Plaintiff incorporates by reference the facts and authorities set forth in the foregoing sections hereof.

25. Section 794 of Title 29 of the United States Code provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

26. Sections 12101 and 12131 of Title 42 of the United States Code prohibit discriminatory acts by public entities against persons with disabilities, including to meet an

11

affirmative obligation to provide persons with disabilities accommodations.

27. Defendant's described acts and omissions as to Plaintiff were discriminatory because Defendant acted with deliberate indifference when it was notified twice of Plaintiff's disabilities and twice failed to provide timely accommodations to Plaintiff, failed to take reasonable steps to ensure implementation before graded assessments, and thereby subjected Plaintiff to avoidable academic risk and harm. Defendant's eventual approval of accommodations occurred only after a substantial delay and did not cure the prior denial of access.

### G. REQUEST FOR TEMPORARY INJUNCTION

28. Plaintiff asks the Court to issue an affirmative temporary injunction ordering Defendant to:

1) Maintain Plaintiff's academic status within the Class of 2027 and shall provide a path for Plaintiff to continue progression toward MS3 enrollment with his cohort while this action is pending;

2) Within three (3) business days of the Court's temporary injunction, provide all internal eligibility confirmations, attestations, and authorizations necessary for Plaintiff to schedule the USMLE Step 1 examination; and

3) Refrain from imposing any academic penalty, progression delay, dismissal action, or adverse academic record notation arising from the challenged unaccommodated assessment or violations that are the subject of this litigation.

### H. REQUEST FOR JURY

29. Plaintiff hereby requests that a jury be empaneled, and, that theforegoing causes of actions and requests for relief be presented thereto.

## I.   PRAYER FOR RELIEF

30.   Wherefore, premises considered, Plaintiff prays that upon final consideration of this matter that Plaintiff has judgment against Defendant for:

   a. Economic, noneconomic, special, and general damages;

   b. The requested temporary injunctions, specifically:

   1) Maintain Plaintiff's academic status within the Class of 2027 and shall provide a path for Plaintiff to continue progression toward MS3 enrollment with his cohort while this action is pending;

   2) Within three (3) business days of the Court's temporary injunction, provide all internal eligibility confirmations, attestations, and authorizations necessary for Plaintiff to schedule the USMLE Step 1 examination; and

   3) Refrain from imposing any academic penalty, progression delay, dismissal action, or adverse academic record notation arising from the challenged unaccommodated assessment or violations that are the subject of this litigation.

   c. Attorney's fees;

   d. Taxable expenses of litigation and costs of court; and,

   e. Post-judgment interest at the maximum lawful rate.

31.   Plaintiff further prays that Plaintiff receive such other and further relief to which they may be justly entitled.

Respectfully submitted,

HOWLAND SHAKE LAW, LLP
17304 Preston Road, Suite 800
Dallas, Texas 75252
Tel: 469-371-4282
Fax: 469-574-7660

 /s/George Shake
George H. Shake
State Bar No. 24077524
Federal ID 3684307
george@howlandshakelaw.com
Attorney for Plaintiff