United States District Court
Southern District of Texas
**ENTERED**
September 25, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| NELSON IHEONUNEKWU,<br><br>Plaintiff.<br><br>V.<br><br>JOHN SEALY SCHOOL OF MEDICINE AT THE UNIVERSITY OF TEXAS MEDICAL BRANCH,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:25-cv-00425 |

**MEMORANDUM AND RECOMMENDATION**

Pending before me is a motion to dismiss filed by Defendant The University of Texas Medical Branch at Galveston ("UTMB"). *See* Dkt. 32. After reviewing the operative pleading, the briefing, and the applicable law, I recommend that the motion be granted.

**BACKGROUND**[1]

This is a failure-to-accommodate claim under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Plaintiff Nelson Iheonunekwu is currently a student at UTMB's John Sealy School of Medicine. On December 6, 2023, Iheonunekwu, then a first-year medical student, emailed UTMB's ADA office requesting an accommodation for an upcoming exam. The ADA office responded on December 8, 2023, with an explanation of the ADA Academic Accommodations Process and a request for medical documentation in the form of a doctor's note addressing Iheonunekwu's diagnosis. *See* Dkt. 27-1 at 2. The ADA office also asked Iheonunekwu to state the required accommodations needed to address his health condition. *See id.*

[1] These facts are taken from Iheonunekwu's amended complaint, which is the operative pleading, and the attached exhibits. *See* Dkt. 27. At the motion to dismiss stage, I take all Iheonunekwu's well-pleaded factual allegations as true.

On December 14, 2023, Iheonunekwu submitted the ADA Student Intake Form, checking a box that described his disability as falling under the umbrella of "psychological/emotional/mood." Dkt. 27-2 at 1. Iheonunekwu identified Dr. Josephine Novak, who works at the UTMB Student Health and Counseling, as his treating physician, but marked "[n]o" to the question "[h]ave you undergone any comprehensive testing for your health condition?" *Id.* at 1–2. Iheonunekwu noted that he "would like to take [his] exam on January 2, alone" and "if possible, [he] would like to arrive and sit in the designated room 30 minutes before the slated time of the exam to avoid any interactions with classmates and potential triggers of anxiety." *Id.* at 3.

The ADA office emailed Iheonunekwu back the same day, verifying that his ADA Accommodation had been submitted. *See* Dkt. 27-3 at 1. The ADA office also requested that, in addition to the ADA forms, Iheonunekwu provide "medical documentation, i.e., a physician's note" that addressed Iheonunekwu's diagnosis and the accommodations he required. *Id.* The ADA office again requested a doctor's note on December 15, 2023, stating that "our office is still awaiting a doctor's note in order to be able to assess what, if any, accommodations you require secondary to your health condition." Dkt. 27-4 at 1.

On December 18, 2023, Dr. Novak notified Iheonunekwu that UTMB Student Health could not provide him with a testing accommodation letter, and that Iheonunekwu would have to "go through a provider that can do a formal accommodation and/or ADHD testing" because this process would involve "several days of testing with equipment that we do not use in our student health clinic." Dkt. 27-7. On December 19, 2023, Iheonunekwu told Dr. Novak that he could not get an appointment in time for his next exam. *See id.* After that, Iheonunekwu ceased communicating with UTMB's ADA office.

In the Fall of 2024, during his second year of medical school, Iheonunekwu failed his Renal class. *See* Dkt. 27-10 at 1. In the Spring of 2025, Iheonunekwu failed his Essential in Endocrinology (EER) and Practice of Medicine 2 (POM2)

courses. *See id.* It was not until June 2025—approximately a year and a half after he was told to supply a doctor's note—that Iheonunekwu reached out again for accommodations. On June 18, 2025, Iheonunekwu met with ADA office employees to discuss his request for an accommodation. *See* Dkt. 27-8. On June 23, 2025, Iheonunekwu finally submitted a doctor's note from his psychiatrist to the ADA office. *See* Dkt. 27-10 at 1. In July 2025, the Academic Review Committee denied Iheonunekwu's academic appeals, forcing him to repeat his second-year curriculum. The ADA office finally approved Iheonunekwu's requested testing accommodation on September 18, 2025. Dkt. 27 at 7.

On December 18, 2025, Iheonunekwu instituted this lawsuit, asserting disability discrimination through UTMB's alleged failure to accommodate his requested accommodations. On March 24, 2026, Iheonunekwu filed his First Amended Complaint, which is the operative pleading. *See* Dkt. 27. UTMB now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Dkt. 32.

## LEGAL STANDARD

Under Rule 12(b)(6), a defendant is entitled to dismissal when the plaintiff fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, I must accept all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (quotation omitted).

Legal conclusions, however, are not entitled to the same presumption of truth. *See Iqbal*, 556 U.S. at 680.

## ANALYSIS

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). "The prima facie case of discrimination under the Rehabilitation Act is operationally identical to the test under the ADA." *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004).

To plead a prima facie case of discrimination under the ADA and the Rehabilitation Act, Iheonunekwu must allege (1) that he is a "qualified individual"; (2) "that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) "that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Id.* at 671–72.

Iheonunekwu may plead discrimination "by reason of his disability" based on a failure-to-accommodate theory. *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017). To establish a failure-to-accommodate claim, Iheonunekwu must allege: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by [UTMB]; and (3) [UTMB] failed to make reasonable accommodations." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37

F.4th 1013, 1032 (5th Cir. 2022) (quotation omitted). Mere knowledge that Iheonunekwu has a disability is not enough. Iheonunekwu must plead that he identified his disability as well as its resulting limitations to UTMB or its employees "and requested an accommodation in direct and specific terms." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). Once a plaintiff identifies his disability and requests reasonable accommodations, the covered entity "is obligated by law to engage in an interactive process: a meaningful dialogue with the [individual] to find the best means of accommodating that disability." *Equal Emp't Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (quotation omitted).[4] "When [a covered entity] does not engage in a good faith interactive process, that [entity] violates the ADA." *Id.* at 621.

Iheonunekwu first requested a testing accommodation on December 6, 2023. *See* Dkt. 27 at 1. On December 8, 2023, UTMB requested medical documentation in the form of a doctor's note to substantiate Iheonunekwu's disability. *See* Dkt. 27-1 at 1. Iheonunekwu suggests that UTMB imposed an unnecessary restriction (asking for a doctor's note) that frustrated the interactive process and further delayed him receiving accommodations. *See* Dkt. 27 at 6. This argument has no merit. UTMB "need not take [Iheonunekwu]'s word for it that he has an illness that may require special accommodation." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 482 (5th Cir. 2016) (cleaned up). UTMB may require Iheonunekwu to "provide documentation that is **sufficient** to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested." Enforcement Guidance: Disability-related Inquiries and Medical Examinations of Employees Under the Americans With Disabilities Act (ADA), 2000 WL 33407181, at *10 (July 27, 2020) (emphasis in original). If the document does not substantiate that the student has a disability, then the "ADA does not prevent [a school] from requiring [a student] to go to an appropriate

---

[4] The interactive process applies to both employment and educational contexts. *See Pickett*, 37 F.4th at 1033.

health care professional of the [school]'s choice." *Id.* at *11. "If [a student] provides insufficient documentation, [the school] does not have to provide reasonable accommodation until sufficient documentation is provided." *Id.*

UTMB requested medical documentation from Iheonunekwu on three separate occasions: on December 8, December 15, and December 18, 2023. *See* Dkts. 27-1, 27-4, 27-7. But Iheonunekwu did not submit the required doctor's note until June 23, 2025—a year and a half *after* he first requested accommodations. *See* Dkt. 27 at 6. UTMB "cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process, is traceable to the [Iheonunekwu] and not [UTMB]." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (quotation omitted). It was Iheonunekwu who caused a breakdown in the interactive process with his delay in providing the required medical documentation to UTMB's ADA office.

I must also address Iheonunekwu's argument that UTMB's ADA office took 12 weeks to approve Iheonunekwu's testing accommodations after he submitted his doctor's note. *See* Dkt. 27 at 7. While an exact time limit is not imposed by disability laws or existing caselaw, once a request for accommodation is made, the covered entity must "make reasonable accommodations for a known disability." *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246 (5th Cir. 2025) (quotation omitted). Thus, a "delay in providing reasonable accommodation may show a lack of good faith in the interactive process." *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246–47 (5th Cir. 2016), *as revised* (Oct. 5, 2016). Iheonunekwu alleges that during the 12-week delay he "completed multiple graded quizzes and examinations unaccommodated, increasing [his] risk of adverse academic action and exacerbating [his] emotional distress." Dkt. 27 at 7. It is unclear what damages Iheonunekwu incurred during this 12-week period as he ultimately passed his classes. *See* Dkt. 32 at 23. To the extent that Iheonunekwu believes that he can state a disability discrimination claim by failure to accommodate for UTMB's conduct *after* June 23, 2025, he should be given leave to amend. *See Ass'n of Am.*

*Physicians & Surgeons Educ. Found. v. Am. Bd. Of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) ("Normally, plaintiffs facing a motion to dismiss must go through a process of receiving briefing from the movant, conducting research and submitting opposing briefing to the district court, and finally receiving a ruling identifying potential flaws in their original complaint."). But Iheonunekwu's failure to supply the requested doctor's note to UTMB forecloses any claim he might have prior to June 23, 2025, when he finally provided the requested documentation.

**CONCLUSION**

For the reasons discussed above, I recommend that UTMB's motion to dismiss (Dkt. 32) be granted. Before the court enters final judgment, however, I recommend that Iheonunekwu be given two weeks from the adoption of this memorandum and recommendation to file an amended complaint pertaining solely to UTMB's conduct after June 23, 2025.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 25th day of September 2026.

______________________________
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE