United States District Court
Southern District of Texas
**ENTERED**
November 10, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| NELSON IHEONUNEKWU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-425 |
| | § | |
| JOHN SEALY SCHOOL OF MEDICINE AT THE UNIVERSITY OF TEXAS MEDICAL BRANCH, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

On September 4, 2026, all pretrial matters in this case were referred to United States Magistrate Judge Andrew M. Edison under 28 U.S.C. § 636(b)(1). Dkt. 50. Judge Edison filed a memorandum and recommendation on September 25, 2026, recommending that the defendant's motion to dismiss (Dkt. 32) be granted but that the plaintiff be given two weeks from adoption of the recommendation to file an amended complaint. Dkt. 51.

On October 9, 2026, the plaintiff filed his objections to the memorandum and recommendation. *See* Dkt. 54. The plaintiff additionally filed a motion to seal limited portions of supplemental exhibits that were offered with his objections. *See* Dkt. 52 (redacted); Dkt. 53 (sealed).

Specifically, the plaintiff seeks to seal his sensitive medical information from public view. In accordance with 28 U.S.C. § 636(b)(1)(C), this court is required to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection [has been] made." After conducting this de novo review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).

The court has carefully considered the objections; the memorandum and recommendation; the pleadings; and the record. The court accepts Judge Edison's memorandum and recommendation and adopts it as the opinion of the court.

The plaintiff first objects to Judge Edison's finding that the plaintiff alone caused the breakdown in the interactive process. The plaintiff contends that he complied with the defendant's designated accommodation process by sending an email documenting his request, identifying Dr. Josephine Novak at UTMB Student Health and Counseling as his treating physician, and completing a major-life-activities assessment that identified the limitations associated with his disability. The court agrees with the plaintiff that these actions initiated the interactive process. But the plaintiff claimed a

"psychological/emotional/mood" disability. Dkt. 54 at 6. The defendant is entitled to ask for a doctor's note substantiating the plaintiff's disability. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 482 (5th Cir. 2016). It was the plaintiff's responsibility to procure that note. The plaintiff's own pleading shows that Dr. Novak "could not provide him with an accommodation letter." Dkt. 27 at 3. Dr. Novak declined to provide the plaintiff with a doctor's note because the student health clinic lacked the equipment required for "formal accommodation and/or ADHD testing." Dkt. 27-7 at 1.

The plaintiff next objects that "Dr. Novak's December 18, 2023 outside-testing direction for comprehensive psycho-educational evaluation . . . unreasonably obstructed obtaining appropriately tailored support." Dkt. 54 at 8–10. The plaintiff incorrectly conflates Dr. Novak and Student Health with the defendant's ADA Office—they are not one in the same. By way of analogy, had the plaintiff been at an academic institution without a student health department and sought the opinion of an outside physician who, like Dr. Novak, refused to provide a doctor's note, there would be no question that the academic institution would not be responsible for that outside physician's refusal. The ADA Office did not mandate any testing; it merely requested a doctor's note. It was Dr. Novak who refused to provide

such a note and stated that the plaintiff would have to go elsewhere. Nothing about the ADA requires a physician to provide a doctor's note when, in the physician's professional opinion, testing is required to verify what the physician would state in the note. And the ADA Office cannot be held responsible for Dr. Novak's refusal to give the plaintiff what he wanted.[*] *See Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (refusing to hold the College liable for Counseling Services' actions); *see also Jackson v. Univ. of Tex. Sw. Med. Ctr. Sch. of Med.*, No. 25-10942, 2026 WL 1165560, at *4 (5th Cir. Apr. 29, 2026) (refusing to find medical school responsible for failure to accommodate where delay was caused by the plaintiff's provider).

The plaintiff also objects that "Dr. Novak's diagnosis and Student Health's internal medical information constituted the first professional opinion provided to UTMB," and therefore, under the defendant's own internal policies, the defendant should have arranged and paid for any testing required. Dkt. 54 at 11. The court does not see how Dr. Novak's *refusal* to provide the required doctor's note constitutes a professional

[*] This is not to suggest Student Health and/or Dr. Novak could never be held liable for disability discrimination or failure to accommodate. But on the facts before the court, there is no suggestion that Dr. Novak was formally involved in the accommodation process or that the ADA Office delegated authority to Dr. Novak to establish the ADA Office's requirements for substantiating a disability.

opinion. Dr. Novak *declined* to give a professional opinion because she believed that further testing would be required to substantiate such an opinion. The first time that the plaintiff provided the defendant with a professional opinion was on June 23, 2025. *See* Dkt. 27-10 at 1.

The plaintiff also objects that he provided testing results to the ADA Office approximately one week prior to providing the ADA Office with a doctor's note on June 23, 2025, and that "this alleged submission and rejection occurred before June 23, 2025 and cannot accurately be reduced to eighteen months of submitting no documentation at all." Dkt. 54 at 13. That the plaintiff provided testing results one week prior to providing a doctor's note does not materially affect the analysis that the plaintiff waited more than a year to provide the defendant with the doctor's note it rightfully requested.

The plaintiff also objects that "passing courses does not defeat the pleaded denial of meaningful access during the postsubmission delay." Dkt. 54 at 15. Judge Edison has already recommended that "[t]o the extent [the plaintiff] believes that he can state a disability discrimination claim by failure to accommodate for UTMB's conduct *after* June 23, 2025, he should be given leave to amend." Dkt. 51 at 6. Whatever arguments the plaintiff wishes to make about the defendant's alleged delay in granting his requested

accommodation after he finally provided a doctor's note, the plaintiff can make those arguments in his amended complaint.

Finally, the plaintiff objects to June 23, 2025, as a categorical limit on curative amendment. The plaintiff is free to amend his complaint however he sees fit. But absent some unusual facts not yet contemplated, unless the plaintiff can demonstrate that he provided a doctor's note before June 23, 2025, then claims before that date will necessarily fail for the reasons stated in the memorandum and recommendation and in this order.

It is therefore ordered that:

(1) Judge Edison's memorandum and recommendation (Dkt. 51) is approved and adopted in its entirety as the holding of the court;

(2) The defendant's motion to dismiss (Dkt. 32) is granted;

(3) The plaintiff has until Tuesday, November 24, 2026, to file an amended complaint; and

(4) The plaintiff's motion to seal limited portions of supplemental exhibits (Dkts. 52, 53) is granted.

SIGNED on Galveston Island this 10th day of November, 2026.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE